UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ESCORT INC. and BELTRONICS USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HOYT A. FLEMING, et al., <br><br> Defendant. | Case No. 1:12-cv-0064-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss filed by defendants Hoyt A. Fleming and the lawfirm of Park, Vaughan, Fleming & Dowler LLP. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## BACKGROUND

Plaintiffs Escort and Beltronics make radar detectors. Three years ago, in another case, they were sued for patent infringement by Hoyt Fleming. *See Fleming v. Escort, CV-09-105-BLW* ("*Fleming I*"). In that case, set for trial in a few weeks, Fleming is represented by attorney Michael Dowler, a partner in the firm of Park Vaughn. After Fleming received a summary judgment decision in *Fleming I* that Escort infringed one of his patents, he had his attorney Dowler send a letter to retailers of Escort's products, putting them on notice that their sales were infringing and demanding that they cease

**Memorandum Decision and Order - 1**

selling those products.  By statute, notice to infringers is an important factor in determining the patent holder's damages for infringement.  *See* 35 U.S.C. § 287.

Escort responded to the letter by filing this lawsuit.  Escort alleges that the letter to one of those retailers – Fulfillment Services – falsely stated that Fulfillment was liable to Fleming for patent infringement.  Escort has sued Fleming and his counsel's law firm, Park Vaughn.  Escort's complaint asserts five state law causes of action: (1) trade libel and disparagement, (2) business defamation, (3) unfair competition, (4) tortious interference with contract and prospective business advantage, and (5) conspiracy.  The complaint also asserts, in the first and third cause of action, that Fulfillment Letter constitute a violation of the federal Lanham Act, 15 U.S.C. § 1051 et seq.

The letter at the heart of this case was sent on February 6, 2012, and signed by attorney Dowler.  It was sent to, among others, Fulfillment Services (the "Fulfillment Letter"), a distributor of Escort's radar detectors.[1]  In the letter, attorney Dowler demanded that Fulfillment "immediately cease and desist from selling" each of the radar detectors at issue in *Fleming I*.  *See Exhibit D (Dkt. No. 3-4)* at p. 2.[2]  The letter stated that

> Anyone who makes, uses, sells, offers to sell, or imports the infringing . . . radar detectors is liable in damages to Mr. Fleming (35 U.S.C. § 271.) The fact that Escort sold them to Fulfillment Services is not a defense. Fulfillment Services is selling the infringing products and Fulfillment Services is, therefore, liable as an infringer.

---

[1] Fleming's response to the motion to dismiss indicates that cease-and-desist letters were sent to other distributors and retailers of Escort's products as well. *See Motion to Dismiss (Dkt. No. 23)* at p. 3.  However, the complaint addresses only the Fulfillment Letter.

[2] The Court takes judicial notice of the Fulfillment Letter as a document of undisputed authenticity that is referenced in the Complaint.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

 **Memorandum Decision and Order - 2**

*Id.* at pp. 2-3. The letter continued,

> Rest assured that Mr. Fleming has no intent or desire to make a double recovery on the infringing products, *i.e.,* he is not seeking to recover infringement damages from both Escort and Fulfillment Services. Nevertheless, Escort is a small, private company that was purchased in a bankruptcy estate auction in 2005, and to the extent Escort is unable to pay the full damage award after trial and/or Fulfillment Services does not immediately cease and desist from selling the infringement products, Mr. Fleming will have a claim against Fulfillment Services.

*Id.* (footnote omitted). The letter describes the Court's summary judgment order in *Fleming I* as a "judgment that [Escort's radar detectors] infringe claims 18, 45, 47, and 48 in U.S. Patent No. RE39,038." *Id.* at 2. A copy of the redacted summary judgment order was attached to the letter. *Id.*

About a week after he sent the letter, Fleming filed an infringement action against Fulfillment Services, other retailers, and Escort, alleging that they infringed on his patents through "making, using, offering to sell, or selling . . . intelligent radar detectors." *See Fleming v. Escort* CV-12-66-BLW ("*Fleming II*").

To summarize, there are three related cases here: (1) *Fleming I*, where the Court held that Escort infringed Fleming's patent; (2) *Escort v. Fleming*, the present case where Escort sues over Fleming's cease-and-desist letter; and (3) *Fleming II*, where Fleming has sued the retailers (and Escort) for selling infringing devices.

Turning now to the present case, the Court will consider Fleming's motion to dismiss.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

**Memorandum Decision and Order - 3**

of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 1965.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly*.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Id*.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id. at 1950*.  Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss. *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery.  See *Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents,* 616 F.3d 963 (9th Cir. 2010)(issued after *Iqbal*).  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866*

(9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment.  See *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff.  *Twombly*, 550 U.S. at 555–56.  The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (internal quotation marks omitted).

## ANALYSIS

**State Law Claims**

Fleming claims that he is immune to any state law cause of action because Idaho has adopted a litigation privilege that creates immunity for the cease-and-desist letter. See *Taylor v. McNichols*, 243 P.3d 642, 657 (Id.Sup.Ct. 2010). Except for its Lanham Act causes of action, all of Escort's claims arise from Idaho law.  For all of these state law claims, the Court applies the state law of privilege.  See Fed. R. Evid. 501.  The Court agrees that Idaho's litigation privilege provides immunity against Escort's state law claims.

Idaho has long recognized a privilege protecting litigants from liability for claims of defamation or libel arising from attorney statements made in the course of judicial proceedings.  *Richeson v. Kessler*, 255 P.2d 707, 708-09 (Id.Sup.Ct. 1953).  In *Taylor*, the

 **Memorandum Decision and Order - 6**

Idaho Supreme Court extended this defamation privilege to provide absolute immunity "from all civil suits which are raised against [an attorney] by a party adverse to their clients, as a result of their representation of their clients." *Taylor*, 243 P.3d at 657. The privilege presumptively applies when an attorney is sued by an adversary of a client because of communications the attorney has made "in the course of litigation," *id.* at 652, or "in the course of judicial proceedings," *id.* at 653. The communication must be "related to" the judicial proceeding. *Id.* at 655. There is an exception to the privilege when the attorney acts outside the scope of his employment or solely for his own interest. *Id.* at 657.

Escort argues that the Fulfillment Letter falls outside the scope of Idaho's litigation privilege because the letter is not related to *Fleming I,* because Fulfillment Services was not a party to that case. Assuming, without deciding, that the Fulfillment Letter is not related to *Fleming I*, it is clearly related to *Fleming II*, where Fleming sued Fulfillment Services for the very conduct complained of in the letter.

Escort argues, however, that Idaho's litigation privilege does not provide immunity because the Fulfillment Letter was sent before *Fleming II* was filed, and thus is not a communication made "in the course of litigation." *Taylor,* 243 P.3d at 657. The Court disagrees for three reasons.

First, while Idaho courts have not directly considered whether a cease-and-desist letter falls within the scope of its litigation privilege, they have defined its scope to include prelitigation communications. In *Richeson*, the Idaho Supreme Court adopted the

Memorandum Decision and Order - 7

meaning of "due course of a judicial proceeding" from the Restatement of Torts, holding that "'[a]n attorney at law is absolutely privileged to publish false and defamatory matter of another in communications *preliminary to a proposed judicial proceeding*, or in the institution of, or during the course'" of such a proceeding.  Richeson, 255 P.2d at 709 (emphasis added) (quoting 3 Restatement of the Law of Torts § 586 at p. 229).

In *Malmin v. Engler*, 864 P.2d 179, 183 (Id.Ct.App. 1993), the court held that settlement negotiations between parties that occurred prior to a scheduled hearing were protected by the privilege.  The court rejected the argument that the negotiations were not in the course of judicial proceedings even though Engler, as an Arizona attorney, was not authorized to participate in the scheduled Idaho hearing.  It reasoned that "[t]he rule of immunity, as stated in § 586 of the Restatement includes statements made *preliminary to a proposed* judicial proceeding. . . .  The fact that [Engler] had not secured permission to make a court appearance in Idaho or formally associated with Idaho counsel is irrelevant." *Id.*  Finally, the *Taylor* court, in expanding the privilege to causes of action beyond defamation and libel, made clear that *Engler* and *Malmin* continue to define the scope of the privilege, which extends to protect "statements made prior to, or in preparation of, a judicial proceeding." *Taylor*, 243 P.3d at 653 (citing *Malmin*, 864 P.2d at 184).

Second, other jurisdictions considering whether prelitigation correspondence falls within the scope of their litigation privilege have widely concluded that it does. *See, e.g.*, *Messina v. Krakower*, 439 F.3d 755, 761 (D.C. Cir. 2006) (holding that privilege applied

 Memorandum Decision and Order - 8

to a "straightforward, although strong and direct, letter from counsel alerting the recipient of a potential legal claim and seeking to resolve the claim short of litigation" (internal quotation marks omitted)); *Kolar v. Donahue, McIntosh & Hammerton*, 52 Cal. Rptr. 3d 712, 719 (Cal.Ct.App. 2006) (holding that "[i]ncluded under [the privilege's] protection are prelitigation demand letters"); *N.J. Sports Prods., Inc. v. Bobby Bostick Promotions, LLC*, 963 A.2d 890, 896 (N.J.Super.Ct.Ch.Div. 2007) ("There is good reason . . . to confer an absolute privilege upon the widespread practice among lawyers of prelitigation correspondence threatening suit on behalf of their clients."); *Kirschstein v. Haynes*, 788 P.2d 941, 945 (Okla.Sup.Ct. 1990) ("[W]e will recognize an absolute privilege for communications made preliminary to proposed judicial or quasi-judicial proceedings . . . ."). Escort cites no authority that has held to the contrary. Given the Idaho Supreme Court's reliance on out-of-state precedent in adopting the litigation privilege, *Taylor*, 243 P.3d at 653-57, the Court finds this body of authority persuasive in determining its scope.

      Third, the Idaho Supreme Court has emphasized that the interpretation of the scope of the litigation privilege must be considered in the context of its purpose, which is " a public policy of securing to attorneys and officers of the court the utmost freedom in their efforts to secure justice for their clients." *Malmin*, 864 P.2d at 183 (internal quotation marks omitted). That purpose is well served by recognizing immunity for prelitigation communications related to a contemplated lawsuit. Prelitigation cease-and-desist letters are a standard tactic used to put parties on notice of a potential litigant's claim and to facilitate settlement and avoid the expense of litigation. As the Fifth Circuit has

recognized, "[I]t would be absurd to hold that [the doctrine of immunity] does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning." *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983). These observations are particularly applicable in the context of a patent infringement claim, where federal law requires a patentee to put an alleged infringer on notice of the infringement in order to recover damages. *See* 35 U.S.C. § 287(b)(2).

For these reasons, the Court rules that the Fulfillment Letter, as a communication "made preliminary to a proposed judicial proceeding," was made within the course of litigation. *Malmin*, 864 at 183 (emphasis removed). Escort advances no other ground on which the litigation privilege might not apply to the Fulfillment Letter. Escort does not contend that the letter lacks a "reasonable relation" to litigation between Fleming and Fulfillment Services. *Taylor*, 243 P.3d at 653 (internal quotation marks omitted). Nor does it seem that Escort could plausibly make this argument, given that Fleming did in fact file suit against Fulfillment. The Complaint also states that "[t]he Fulfillment Services Letter was sent at the instruction and direction of Fleming and Park Vaughan." *See Complaint (Dkt. No. 1)* at ¶ 27. This allegation establishes that Park Vaughan was acting in the scope of its employment in sending the letter. *See id.* at 657.

Many of the jurisdictions adopting the litigation privilege hold that "prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." *Action Apartment Ass'n, Inc. v. City of Santa*

Memorandum Decision and Order - 10

*Monica*, 163 P.3d 89, 102 (Cal. 2007). This good faith requirement, however, applies only to the intent to bring suit, not to the content of the communication. *Id.* at 102. "As long as the speaker or writer of the defamatory communication has an actual subjective good faith belief that litigation is seriously contemplated the privilege attaches whether or not he has a good faith belief in the truth of the communication." *Kirchstein*, 788 P.2d at 952. Even assuming that this good faith element is a requirement of Idaho law, Escort has not alleged that the cease-and-desist letter did not relate to a lawsuit "contemplated in good faith and under serious consideration." *Action Apartment Ass'n, Inc.*, 163 P.3d at 102.

The Fulfillment Letter was a communication made in the course of litigation between Fleming and Fulfillment Services. Escort has not advanced any other ground on which the litigation privilege does not provide immunity. Therefore, the Court will grant the motion to dismiss Escort's state law claims.

**Federal Claims: The Lanham Act**

In addition to the state law grounds discussed above, Escort brings Count I and III pursuant to the federal Lanham Act. An adequately pled cause of action under the Lanham Act must allege that

> (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

Memorandum Decision and Order - 11

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir 2008) (internal quotation marks omitted).

Fleming argues that the Lanham Act claims should be dismissed because of a purported federal litigation privilege.  *See* Fed. R. Evid. 501 (explaining that, for a federal cause of action, federal courts rely on "[t]he common law – as interpreted by United States courts in the light of reason and experience" to evaluate a claim of privilege).

The Court rejects Fleming's argument because the Ninth Circuit has never recognized a federal litigation privilege. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (per curiam) (finding no cases "indicating such a [litigation] privilege has been recognized as a matter of federal common law").  In fact, the Ninth Circuit has repeatedly refused to recognize a litigation privilege as a defense in the context of various federal statutes.  *See Pardi v. Kaiser Foundation Hosp.*, 389 F.3d 840, 851 (9th Cir. 2004) (no litigation privilege as bar to ADA liability); *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (no litigation privilege as bar to liability under 42 U.S.C. § 1983); *Religious Tech. Ctr.*, 971 F.2d at 367 n.10 (no litigation privilege as bar to liability for copyright infringement).  Fleming cites no authority that shows that a litigation privilege has been adopted in the Ninth Circuit.[3]  The Court thus concludes that

---

[3]     Fleming cites two cases in support of its claim that there is a broadly recognized federal litigation privilege, but neither supports his assertion. In *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983), the Supreme Court held that federal common law guarantees absolute immunity for witness testimony, but the Court did not recognize a broad litigation privilege.  Fleming also cites *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074-75 (7th Cir. 1998), but mis-characterizes a descriptive section of the opinion as the court's holding. The *Steffes* court actually held that an absolute litigation privilege is inconsistent with the "policies underlying the anti-retaliation provisions of Title VII and the ADA." *Id.* at 1075.

**Memorandum Decision and Order - 12**

there is no federal privilege that provides immunity to the alleged violations of the federal Lanham Act.

However, the Court holds that Escort has not plausibly alleged a violation of the Lanham Act because the Fulfillment Letter was not, as required, a "commercial advertisement or promotion." *Newcal Indus., Inc.*, 513 F.3d at 1052. To meet the "commercial advertisement or promotion" element a communication must be

> (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

*Id.* at 1054 (internal quotation marks omitted)

The Court concludes, in accord with the other federal courts that have considered the question, that a cease-and-desist letter that solely asserts purported legal rights is not an advertisement or promotion. *Vupoint Solutions Inc. v. Mustek Sys., Inc.*, No. CV 11–07826 DDP (Rzx), 2012 WL 405046, at *2 (C.D. Cal., Feb. 8, 2012); *Luxpro Corp. v. Apple Inc.*, No. C 10–03058 JSW, 2011 WL 1086027, at *12 (N.D. Cal. Mar. 24, 2011); *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1279-82 (S.D. Fla. 2008); *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 897-98 (N.D. Ohio 2008); *Zinus Inc. v. Simmons Bedding Co.*, No. C 07-3012 PVT, 2007 WL 4287391, at *5 (N.D. Cal. Dec. 6, 2007); *Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99–1877DT(MCX), 2000 WL 986995, at *7-8 (C.D. Cal Feb. 22, 2000). In particular, the letter does not meet the first or third element of the advertisement or promotion

definition.

Under the first prong, commercial speech is speech which proposes a commercial transaction. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)). The Fulfillment Letter does not encourage Fulfillment to buy Fleming's commercial goods or otherwise propose any commercial transaction. *See Luxpro Corp.*, 2011 WL 1086027, at *12. Instead, the central message of the letter is an assertion of Fleming's purported legal rights and a demand that Fulfillment take action to comply with those purported rights. *See Avery Dennison Corp.*, 2000 WL 986995, at *8. Similarly, under the third prong, the complaint contains no plausible allegation that the Fulfillment Letter is an attempt to influence a consumer to buy Fleming's product. While Fulfillment Service's compliance with the demands of the letter might benefit Fleming economically by increasing the value of his patent, this is inadequate to show that the purpose of the Fulfillment Letter is to promote a product. *See Zinus Inc.*, 2007 WL 4287391, at *5 ("Pleading that the cease-and-desist letters may influence [the recipient] to refrain from purchasing [the plaintiff's] product is not sufficient").

Escort's arguments in response are not persuasive. First, Escort argues that the Fulfillment Letter constitutes commercial speech because Fleming intended that it hurt Escort's economic interests. Commercial speech has not been so broadly defined. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 715 n.6 (9th Cir. 2011) (noting that the "proposal of a commercial transaction" test is the controlling definition of commercial

**Memorandum Decision and Order - 14**

speech).  The case cited by Escort, *Healthport Corp. v. Tanita Corp.*, 563 F. Supp. 2d 1169, 1179 (D. Or. 2008), involved representations made on a website that the parties did not dispute was "created . . . to sell health-related services."  The Fulfillment Letter is not a comparable attempt to sell a product, and *Healthport* does not support Escort's argument in either its reasoning or facts.

Second, Escort attempts to distinguish two of the district court cases which held that cease-and-desist letters were not an advertisement or promotions.  Escort argues that, unlike the plaintiff in *Vupoint Solutions*, it has alleged "substantial presentations to multiple customers."  2012 WL 405046, at *2.  But the complaint currently alleges only that Fleming sent a single cease-and-desist letter to Fulfillment Services.  Even if the complaint was amended to include more retailers to whom the letter was sent, Escort has not plausibly alleged that the letter was sent "with the sole purpose of promoting defendant's product."  *Id.*  As previously discussed, a purpose of the letter was to give the statutorily-required notice that is a prerequisite to an action for damages.

Escort also notes that in *Zinus*, the district court summarily held that a cease-and-desist letter was commercial speech.  2007 WL 4287391, at *5.  While this is accurate, *Zinus* does not, in the end, support Escort's position because the court concluded that the cease-and-desist letter at issue did not constitute an advertisement under the third prong of the definition, i.e., it was not for the purpose of influencing consumers to buy the defendant's goods.  *Id.* at *6.  Both *Zinus* and *Vupoint Solutions* ultimately support the Court's ruling that the Fulfillment Letter is not an advertisement or promotion.

**Memorandum Decision and Order - 15**

The Court concludes that Escort has not stated a claim under the Lanham Act because it has not plausibly alleged that the challenged statements were made in a "commercial advertisement or promotion." The Court will therefore grant the motion to dismiss Escort's federal claims.

## CONCLUSION

The Court therefore finds that Escort's state law claims are barred by Idaho's litigation privilege, and that the Lanham Act claim fails to plausibly allege that the challenged letter was a "commercial advertisement or promotion." Accordingly, the Court will grant Fleming's motion to dismiss. Because any amendment would be futile, the dismissal is without leave to amend.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Fleming's motion to dismiss (docket no. 23) is GRANTED.

IT IS FURTHER ORDERED, that the Clerk close this case.

DATED: **May 23, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge